*105 Opinion op the Court,
by Ch. J.. Boyle.
THIS was an action of trespass, brought by William R. and Tully R. Payne, against David Harris, sheriff of *106 Allen county. The declaration contains several counts, in each of which it is alleged that the defendant took and carried away two slaves, Michael and Darchee, of the plaintiffs.’
is, sheriff of Allen county, in virtue of which the said Sutton took the slaves in the declaration mentioned, they being the proper goods and chattels of the said Alfred Payne, which is the same trespass supposed, and not others and divers; and this he is ready to verify.” ^ie defendant pleaded, in substance, “that on the of October, 1821, an execution issued from the office of the Allen circuit court, directed to the sheriff of Allen county, in favor of William M’Ferrin, against the estate of Alfred Payne, for the sum of $888, with interest, &c. which execution was put into the hands of T. Sutton, deputy sheriff of this defendant, who then i f;ii ------- WaS’ dnü stU1
To this plea the plaintiffs demurred, and the circuit court adjudged the plea bad, aud sustained the demur-The defendant then pleaded the general issue, w*th leave t° give the special matter in evidence. On the trial, the defendant offered two deeds in evidence, both of which were rejected by the court. He also produced as a witness, Sutton, the deputy sheriff who taken the slaves in virtue of the execution against Alfred Payne; but he being objected to as a witness, the court sustained the objection; to each of which °pini°ns the defendant excepted, and the jury having found a verdict against him, he moved the court for a new trial; but the court overruled the motion, to which ^kewise excepted, speading the whole evidence upon the record; anda judgment having been rendered for the plaintiffs, upon the verdict, the defendant ]las brought the case to this court bv writ of error with i° * supersedeas.
The first question necessary to be noticed, grows out of the demurrer to the plea. The only objection taken argument, to the plea, was, that it amounts to the general issue. Were this the only objection to which the plea was liable, we should have no hesitation • .f , ,, . ., , , , , . , . . saying that the circuit court had erred in sustaining the demurrer; for, in the first place, we cannot admit ^at the plea does amount to the general issue. The genera^ issue denies or traverses the whole cause of action, and the plea in this cases denies or traverses no *107 one allegation of the declaration. But, in the second place, if the plea did amount to the general issue, it would not constitute an availing objection; for it would only be a defect in form, and not in snbstance, and though an availing objection at common law, on a general demurrer, under the statute of Elizabeth, could not be taken advantage of, except by special demurrer, and under the laws of this country, it can taken advantage of neither by general nor special demurrer. But the plea, though not bad on the ground alleged in the argument, is liable to another objection, which must be deemed fatal, and that is, for want of traverse that the slaves in question were the property of the plaintiffs. The allegation in the plea, that the slaves were the goods and chattels of Alfred Payne, is obviously a material allegation; and it is equally clear, that it is inconsistent with the allegation in the declaration, that the slaves were the plaintiffs’. Now, it is a general rule, that where the matter alleged by the defendant in his plea, is inconsistent with, and contrary to the matter set forth in the declaration, there must be a traverse or denial of the matter set forth in the declaration. 1 Saund. Rep. 22, note 2. Thus, where the plaintiff alleges seizin in one under whom he claims title, the defendant cannot allege seizin in another, under whom he claims, without traversing the seizin alleged by the plaintiff; and, in such case, it is held, that the omission of a traverse is matter of substance, and of course is a fatal defect on a general demurrer. Bac. Abr. title Pleas and Pleading, letter H. Com. Dig. title Pleading, (G 22.) The plea is therefore bad, and the circourt court was correct in sustaining the demurrer to it.
The next question to be noticed, is, whether that court erred in rejecting the two deeds offered by the defendant as evidence. One of these was a conveyance by Alfred Payne to W. R. Payne, of his undivided interest in their deceased father’s estate, and the other was a deed of trust, or mortgage, given by Alfred to W. R. Payne, on a tract of land, to secure the payment of a debt. For what purpose these deeds were offered to be read as evidence, is not stated in the bill of exceptions, and upon the face of the deeds themselves, there is nothing to show that they had any connexion with the matters in issue between the parties in this *108 suit, nor was there any extrinsic evidence given, or of* lerec^ to he given, for the purpose of showing such a connexion. We must, therefore, assume the fact to be, that they were wholly foreign to the issue, and being, on that ground,' immaterial, were properly rejected by the circuit court.
The next question to be noticed, grows out of the exception taken to the rejection of the deputy sheriff as a witness on the part of the defendant. It appears that the deputy had, in virtue of an execution, taken the slaves in question as the property of Alfred Payne, and unquestionably, if they were not the property of Alfred Payne, but the property of the plaintiffs, as they allege, the taking was wrongful, and the defendant, as principal sheriff, was liable therefor; and it cannot admit of a doubt, where the principal sheriff is made liable by the default of his deputy, that the latter would be responsible to the former. It is true, that ' the verdict and judgment against, the principal, would not, in such a case, be evidence that the recovery had been had for the default of the deputy; but they would be evidence against him, that the principal had been damnified to the extent of the recovery, and as they might be used for that purpose, it is obvious, that, in another action against the principal for the default of his deputy, the latter would be interested in the event of the suit. The decision of the .circuit court, that the deputy was an incompetent witness, is therefore correct.
The only remaining point to be noticed, relates to the refusal ,of the circuit court to grant a new trial. The evidence on the trial showed that the plaintiffs had bought from Alfred Payne the slaves in question, and had paid him a valuable consideration, and taken an absolute bill of sale therefor, prior to the emanation of the execution in virtu.e of which the slaves had been taken; but the defendant questioned the validity of the sale of the slaves to the plaintiffs, as to creditors and purchasers, upon the ground that there had been no change of the possession of the slaves from Alfred Payne to the piaintiffs. With respect to the transfer of the possession of the slaves, the evidence must be admitted to be of an ambiguous and equivocal character; but, we apprehend, it did conduce, in some degree, to prove a change of possession, and in such a ca?e this *109 court cannot interpose to grant a new trial, in opposition to the of the circuit court.
Judgment affirmed, with damages and costs.
Thomas B. Monroe, Esq one of the counsel for the plaintiff in error, presented the following petition for a rehearing: ,
THE counsel for plaintiff in error, respectfully asks the court for a rehearing of this cause.
If any apology were necessary for again pressing this case upon the court, after it has been twice argued at the bar, once on a motion of the plaintiff for a supersedeas, in which he prevailed, and'secondly, on the hearing in chief, after which the court have affirmed the original judgment, it is believed that it will be found in these very circumstances, connected with the fact stated in the opinion, that the court has, in the last instance, decided against the plaintiff on the demurrer, upon a ground not taken by the defendant’s counsel, or otherwise suggested in either of the arguments. On this point the counsel believes he can show from the author-, ities, that the court has been accidentally led into error.
The court say: “But the plea, though not bad on the ground alleged in the argument, is liable to another objection, which must be deemed fatal, and that is, for want of a traverse that the slaves in question were the property of the plaintiffs;” and to prove this position, proceed with the following argument: . “The allegation in the plea, that the slaves were the property of Alfred Payne, is obviously a material allegation.” To this position, the. counsel unhesitatingly accedes. The opinion proceeds, “and it is equally clear, that it is inconsistent with the allegation in the declaration, that the slaves were the plaintiffs.” This, he also admits, so far as it goes, and will farther contend, that the allegation in the plea is not only inconsistent with that in the declaration; but that it is contrary to it, and implies its negation, and it is hoped, from what follows in the opinion, that the court will not object to this extension of the position, or different mode of expressing it; for it is obvious, that the “general rule” which the court proceeds to lay down, is broad enough to cover the po *110 sition as extended, and, therefore, if the rule be correct, *-he extension cannot embarrass the conclusion the court has drawn. The rule alluded to, immediately follows in these words: “Now, it is a general rule, that when the matter alleged by the defendant in his plea, is inconsistent and contrary to the matter set forth in the declaration, there must be a traverse or denial of the matter set forth in the declaration.” 1 Saund- Rep. 22, note 2. On the correctness of this rule, as understood by the court and applied in the opinion, this question must turn. It is perceived, that the court has not expressed it in broader terms than is supported by the note which they have cited, and the words would seem to bear out the application to our case; but it is believed, that the language of Mr. Williams has been unhappy, and calculated to induce an application of his rule to cases not the same, nor anolagous to those but of which his rule was framed. That this rule ought to be thus confined, cannot be required to be proved. The words are those of a mere elementary writer on the common law', having no legislative power; nor did he, in framing this rule, exercise judicial authority. I have said framing, because I have not been able to find it in any elder author; nor do I find it repeated by any junior writer. He merely expressed an opinion, which any other might do, of what he supposed was the general rule established by adjudicated cases, which are the evidences of the common law, not the law itself. It is then but a scientific index to the cases, and if they will not support the application of the rule to our case, it cannot be employed. The cases he cites, must, therefore, be examined.
The first case is Digby vs. Fitzherbert, from Hob. 103. It was a .quare impedit. The plaintiff counted of a grant of A. seized in fee; the defendant showed he was seized only per after vie; yet, says the book, he may traverse the seizin in fee; but it is not said to be imperatively required. And in Mod. 869, the necessity is also expressed jn the same dubious terms—“and to add a traverse is the surest way.” I am satisfied it is not necessary. The case cited by Williams-is put by Comyns, in his Dig. vol. 102, G 3, as one wherein the traverse is not necessary, yet may be made. He also puts this case,, which shows the reason of the preceding, prefacing it with these words: “Yet if there be not a full *111 confession and avoidance, there may be a traverse, though it is not necessary, as in replevin, if the defendant avows a distress in two parts of the land, and the plaintiff makes title to a fourth of the third part, if the avow-ant convey to him the two parts also, he may traverse that he was seized of the fourth only;” and immediately after this case, follows that cited by Williams, introduced with these words: “So if in a quare impedit,” &c. But it is not necessary to thus dispose of the case; it is susceptible of another answer, which is this: The estate the defendant admitted to be in the plaintiff, was a different estate from that which the plaintiff alleged in his count, and he did not avoid the estate the plaintiff claimed. This answer will be farther illustrated presently.
The second case is Tufton vs. Temple, Vaugh. 8, of which I have not been able to find account.
The third is. Conway vs. Phillips, 1 Sid. 301, of which I am compelled to make the same remark.
The fourth is Walton vs. Sparks, 1 Ld. Raymond, 40', which is so obviously wanting in analogy, that I will only request the court to look into it, if they deem it
The fifth case is Ewer vs. Mole, cited from Yelverton. It was thus the plaintiff alleged a seizin in fee; the defendant shewed a conditional fee, and it was adjudged that he ought to traverse the fee alleged, or it would be intended an absolute fee. Here, the estate alleged by the plaintiff, and that admitted by the defendant to be in the plaintiff, were different estates; and the estate alleged by the plaintiff, was not negatived nor avoided. The principle of this case is fully illustrated by another found on the same page, in which the plaintiff alleged seizin until A. died without issue, and the defendant confessed an estate until B. died without issue, wherein it was ruled that he must traverse the estate alleged by the plaintiff, “for they are different estates,” said the court. And in the next page, the same decision is given on the same reason. The plaintiff counted on an estate to him and his heirs male, and the defendant on one to him and his heirs female; it was held, he must traverse the first estate surmised by the plaintiff, for here the estates were also different. But to show at once the difference bet wen all these cases and ours, it is sufficient to say, the plaintiffs in all the *112 cases cited, alleged certain estates in themselves, which defendants did not confess nor give either express or implied color, and, therefore, could not avoid them, by alleging the plaintiffs had different or inferior estates, without traversing the estates the plaintiffs claimed.
Having omitted to give color to the plaintiffs alleged estate, they could not allege another estate in the plaintiff, nor could they claim an inferior estate to themselves, without traversing the estate on which the plaintiff counted; whereas, the estate alleged in the declaration, in our case, is the identical estate shown to be in the defendant in the execution.
It was not necessary to give color to the title alleged in the declartiOn; because the want of it only made the plea amount to the general issue. This constitutes no objection on general demurrer, which only can be now employed. It was not necessary to make a formal traverse; because the affirmative in our plea, differing from those contained in the cases cited, meets the whole ground of the allegation in the declaration. The estate alleged in the plea to be in Alfred Payne, is not either a different or inferior estate, but is identically the same; and the allegation of title to it, is contrary to the allegation of title in the declaration, and implies its negation in toto. In such a case, it is unnecessary to make a formal traverse, as will be shown by the authorities. Cliitty lays down the rule correctly. He says, “when there are two affirmatives, which do not imply to negative each other, or a confession or avoidance by arguments only, a traverse is necessary.” Our plea may surely be tested by this rule. To say nothing of the plea, having admitted the taking, it meets the action, not by an affirmative, amounting merely to an argumentative denial of the title alleged to the property in the declaration; but it meets it by an allegation which does necessarily give it the implied negative; and if so, Chitty says the traverse is unnecessary. He puts this case as an illustration, and which has been cited by the court against the plea, and must, therefore, be examined: Where the defenclaut alleges seizin in A. the plaintiff cannot, in his replication, allege seizin in B. from whom he claims, without either traversing or confessing and avoiding the seizin alleged by the defendant. Now, it is not presumable, that this case was put. by *113 Chitty as one in which the allegation in the replication implied the negative of that contained in the plea; for it is cited to exemplify the rule, which requires the traverse where the affirmative does not imply a negative, and in the case cited, it certainly does not. B. might have been seized wrongfully, either prior or subsequent to the seizin of A. and yet have no title as against A. It was, therefore, in the case cited, no answer to the defendant’s plea, to allege a seizin in B. which might be' true, and yet the lawful estate be in the defendant claiming under A. But such is not our case. The allegation in the declaration, that the slaves were the plaintiff’s below, refers to the precise point of time when the seizure was made; and the allegation in the plea, that they were the property of the defendant in the execution, relates to the same moment. Each allegation claimed the entire property, and no estate could have been gained in the slaves by disseizin or other wrong, which the allegation in the plea would not have brought directly into issue, it was, therefore, morally impossible for the plea to be true, and yet the plaintiff have the right to recover. Helyar’s case, 6 Coke’s Rep. 24, proves this ground, and shows the distinction here taken. The controversy was between two claiming terms for years in land, in which the court says: “A lease for years cannot be gained but by lawful grant; and, therefore, when one claims a lease for years, and the other claims by an elder grant, there he shall nofi traverse the latter grant, but the other shall traverse the elder grant, or show how he came to it again, to enable the second grant. But it is otherwise in case of a feoffment; for there, if the other party claims by a mer feoffment, lie ought to confess and avoid the latter feofment, as by disseizin; for a disseizin may gain an estate in fee, but none can gain an estate for years, but by a lawful conveyance; and so is the difference” between the case of seizin in land and property in slaves.
But the reliance is not exclusively on the refutation of the apparent authorities against the plea; for the affirmative authorities are conclusive. Some of the cases will be cited. If the defendant plead that the plaintiff abated after the death of A. and the plaintiff re-' plies that A. devised to him, he need not traverse the abatement. Yel. 151; Cro. Car. 581. So, if there be a suggestion in a prohibition or perpetual unity, if *114 the defendant shows that the Abbey has beeen founded within time of memory, he need not traverse the prescription; for it is sufficiently avoided. Dyer 171; Cro. Eliza. 165; 6 Coke 25, A.; 2 Cro. 681; Cro. Eliza. 30. This is believed to be a case completely in point. Perpetuity was a material allegation in the suggestion, as the allegation of property in the plaintiffs below, was in their declaration; and the foundation of the Abbey within time of memory, was as inconsistent with the perpetuity alleged in the suggestion, as property in the defendant in the execution, alleged in our plea, can be with the allegation of property in the plaintiffs, contained in their declaration; but in the case cited, the court held the perpetuity sufficiently avoided, or, I would rather impliedly negatived; and so of our plea.
One other case will be- cited. “If the defendant justifies an imprisonment by the sheriff’s warrant, upon a capias, and that the plaintiff escaped, whereon he, by the same warrant, re-took him; if the plaintiff replies that'he escaped by the sheriff’s consent, lie need not traverse the second.” 1 Brown 187. Here, one of the material allegations in the defendant’s plea, was, that the plaintiff escaped, which the plaintiff was not required to traverse, but admitted to allege the sheriff’s consent, a fact inconsistent with such an escape, which allows the defendant to be retaken on the same capias; nor was he required to traverse the second taking.
But Mr. Williams seems to have gone on a supposition, that two affirmatives could never make an issue. This I have already shown, is not Mr. Chitty’s doctrine-. He says, where two affirmatives do not implicitly negative each other, a traverse, &:c. is necessary; but not where this negative is implied.* In Yel. 38; Cro. Eliz. 555, are strong cases in support of this position. In an audita querela to avoid an execution on a statute alleg*n§ that obtulet the money on the day of payment, &c. if the defendant pleads, that on such a day he demanded it, and no one was ready to pay it, he ought not to traverse absque hoc quod plaintiff obtulet, &c. Here, it is possible that the plaiutiff did tender the money in the morning, and after he departed", the plaintiff made the demand at the place, “no one being ready to pay;” the court would not the traverse.
In the case of the Commonwealth for the use of Wier vs. Bush, this court held, that the allegation that the *115 demand was made whilst Bush was President of the Bank, was a sufficient ajlegation that the demand was made before the expiration of the charter; and this in a declaration in which a higher degree of certainty is required, than in a plea which goes to discharge the defendant, with whom is .always the presumption," that he has done his duty, until thel contrary is shown. 1 Chitty.
But there is another ground on which I will place this question. I lay it down as a rule, without excep-' tion, that in all actions concerning personal property, wherein it is necessary for the plaintiff to allege and prove the title of the property to be in himself, the defendant may, by giving either express or implied colour to his title, allege property either in himself, the defendant under whom he justifies or claims, or a stranger, without traversing the title of the plaintiff. Where color is given to an allegation, it never need be traversed; and color is but form, and not available on general demurrer, and in this view, the plea in question is good. For the first position above laid down, the court are cited to 1 Chitty’s Plead. 368 or 500, and the several cases there cited; and that color is but form, same book 370 or 503, and the authorities there cited.
To illustrate this case, suppose the plea had stated that the plaintiffs below had purchased the slaves from the defendant in the execution, prior to the emanation of a fieri facias, but the possession had not been delivered until after the writ came to his hands, and added the allegations now found in the plea, concluding as he does, with an averment that the slaves were the property of Alfred Payne; or suppose the plea had said, that Alfred Payne was possessed of the goods as his own property and had lost them, and that the plaintiffs below had found them and bailed them to Thomas Payne, Thomas Gattan and Tarleton R. Gattan, and had added the other averments contained in his plea, with the adj dition that he had levied on the slaves in possession of the bailees, concluding as above; would not the plea have been good, according to the strictest rules of the common law? and is there any thing wanting in the plea that was pleaded, except it be this color given in the supposed cases to the plaintiff’s title? And if this color be but form, the omission of it cannot be fatal. It would be a strange construction of the statutes which *116 dispense with the special demurrer, and which cure all defects of form, to make them cure a plea wanting color, and yet subject it to the necessity of a traverse, which wás not before required. Where color was necessary, a traverse never was, and the statutes dispensing with the ne~ cessity of color, cannot make a traverse necessary where it was not necessary before. ■
The attention of the court will again be called to the opinion of the circuit court, rejecting the deputy sheriff who levied the execution, as a witness on the part of the defendant below, though the counsel does confess, that he has not the same confidence on this ground that he has upon the plea. It is conceded, that it cannot admit of a doubt, that where the principal sheriff is made liable by the default of the deputy, the latter will be responsible to the former, and that the verdict and judgment against the principal, might be used in a suit against the deputy, to prove the fact and amount of the recovery, leaving the balance of the case to be made out by other evidence; but the question is, would the damage to the principal, in case of a recovery in this suit, result from a default of the.deputy? By the act of December 27th, 1803, (3 Lift. 445, 2 Dig. L. K. 2047,) the sheriff is bound, whenever the plaintiff in the execution shall indemnify him, to sell the property, even after the finding of a jury against the right of such defendant; and in this case it is proved the sheriff was indemnified. See the record, page 7. The question then is, can the deputy be made liable by the principal for doing an act which he was bound by law to do? The bond of indemnity should betaken, it is presumed, as all other official acts should be performed, in the name of the principal sheriff, and, therefore, on this bond the sheriff should seek his redress in case he were damnified. The deputy could not be liable to the principal, unless he failed to take sufficient security; and in our case, it does not appear he could be so liable, for the evidence is, that the “said M’Ferrins,” plaintiffs in the execution, “having indemnified the sheriff.,” which imports that a bond was taken to the principal sheriff, in due form, with sufficient securities. It was not necessary to introduce the bond. The parol evidence was competent to prove the fact, whilst no objection was made to it.
*117 That the circuit court erred in overruling a motion of the plaintiffs in error for a new trial, the counsel must again insist; for he cannot perceive the evidence that conduces to prove the delivery of the slaves in question. The case was this: The slaves had been placed by Alfred Payne to work at a salt well owned by him, Thomas Payne and tjie Gattans, about five miles from Scottsville. Whilst the slaves were there, the plaintiff below, resident at Bowling-Green, about thirty miles distant, engaged Thomas Payne to receive the execution of the bill of sale, in pursuance of which, Thomas did obtain Alfred to sign it at Scottsville, the slaves still remaining at the well. It is true, Thomas says, in his evidence, that “the possession of the slaves was delivered to him;” but on being immediately asked how the possession was delivered to him, he replied, that “it was considered between himself and said Alfred, that the said negroes were in his possession from that time,” although they were not present; nor was there any overt act, demonstrating the fact on that day or any subsequent time. The abstract question, is nakedly this: Can that delivery of possession required by the commonjand statute law, be performed by mere mental operations, without any act visable to the country? All the purposes of the law would be avoided by such a doctrine. Had the slaves been in possession of the witness on bailment, prior to this transaction, an overt act might not have been necessary to make him the bailee of the purchaser, instead of the vendor; but such was not the case. They were placed at the well as the property, of Alfred, to labor on his behalf, and they did, even after this transaction, continue so to labor, to all appearances, and in the understanding of the other partners and laborers at the well. I will not advert to any of the evidence which goes to prove that the possession of the slaves was not changed, and that the plaintiff below did not so understand the transaction, but admitted their title was wanting in this respect; because I know the only inquiry now is, did the evidence conduce to prove the delivery? The court admit the evidence was of an equivocal and ambiguous character; but seem to apprehend, that it did conduce, in some degree, to prove a change of possession.
“Next to doing right, the great object in the administration of public justice, should be, to give public sat *118 isfaction. If the verdict be liable to many objections ancl doubts, in the opinion of his counsel, or even in the opinion of by-standers, no party should go away dissatisfied, unless he had a prospect of reviewing it.” It is, therefore, believed, the court below ought to have granted a new trial, and this court is respectfully requested to reconsider that question.
On the whole case, the counsel does believe, that the justice and equity of the case, is with his clients, in whom are embraced the plaintiffs in the execution, on whom must fall the whole of the judgment, if not reversed, without hope of redress; and having great confidence, that on a rehearing, he would be able to prove the law to be also with them, he respectfully solicits of the court a rehearing on the points here presented.
T. B. MONROE, for plaintiff in error.
But the court, on the 16th of June, overruled the petition.

Chitty 430 594, Com. Dig. Pleader, H Black^Vf) to 472. ’